IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR S. FOLK, | : | Civil No. 3:21-cv-1986 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| CATRICIA HOWARD, WARDEN, | : | |
| Respondent | : | |

FILED
SCRANTON
OCT 2 5 2022
PER _____
DEPUTY CLERK

## MEMORANDUM

Presently pending before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1), filed by Petitioner Omar Folk ("Petitioner"), an inmate in the custody of the Federal Bureau of Prisons ("BOP"). Petitioner contends that his due process rights were violated in the context of a disciplinary hearing held at the Federal Correctional Institution, Allenwood-Medium, in White Deer, Pennsylvania ("FCI-Allenwood"). (Doc. 1). For the reasons set forth below, the Court will deny the petition.

I.  **Background**

   A.  **BOP Disciplinary Process**

The BOP's disciplinary process is fully outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an

investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. *Id.* § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full-time staff member to represent him at the DHO hearing. *Id.* § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify. *Id.* § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available." *Id.* § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse

2

witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e). The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* § 541.8(f)(2). A copy must be delivered to the inmate. *Id.*

### B. Folk's Criminal Conviction

Folk is serving a 264-month term of imprisonment for distribution and possession with intent to deliver cocaine, being a felon in possession of a firearm, and possession of a firearm during and in relation to a drug trafficking offense, imposed by the United States District Court for the Middle District of Pennsylvania. (Doc. 21-1, pp. 3-7). His projected release date is May 11, 2031, via good conduct time. (*Id.*).

### C. Incident Report Number 3405870

On June 9, 2022, Petitioner entered Receiving and Discharge ("R&D") to be escorted to an outside medical appointment. (Doc. 21-1, pp. 8-10, Incident Report). When Petitioner

3

entered R&D, he advised the reporting officer that he would not go on the trip with him because he filed an injunction against the reporting officer. (*Id.*). Petitioner further stated that he would knock the reporting officer out if he placed his hands on Petitioner. (*Id.*). The reporting officer notified the Lieutenant and then escorted him to the Lieutenant's office. (*Id.*). As a result, on June 9, 2020, Petitioner received Incident Report Number 3405870, charging him with violating Prohibited Act Code 203—threatening bodily harm, and Prohibited Act Code 312—being insolent to a staff member. (*Id.*). On June 10, 2020, Petitioner appeared before the UDC. (*Id.* at p. 9). The UDC referred the matter to the DHO due to the severity of the incident. (*Id.*).

On June 10, 2020, a staff member informed Petitioner of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (*Id.* at p. 11, Inmate Rights at Discipline Hearing). Petitioner was also provided with a "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (*Id.* at p. 12, Notice of Discipline Hearing before the DHO). Petitioner signed both forms, he requested representation by a staff member, and did not elect to call witnesses on his behalf. (*Id.*).

The DHO hearing convened on June 17, 2020. (*Id.* at pp. 14-17). During the June 17, 2020 hearing, the DHO confirmed that Petitioner received advanced written notice of the charges and that he had been advised of his rights before the DHO. (*Id.* at pp. 14-15). Petitioner was represented by a staff member, waived his right to call witnesses on his

4

behalf, and expressed an understanding of his rights before the DHO. (*Id.* at p. 14). He provided the following statement: "I filed on this guy and he threatened me; now all of a sudden he is escorting me on a medical trip. He pushed me up in the area and it happened in R&D." (*Id.*). Petitioner cited no procedural issues and offered no additional documentary evidence. (*Id.*). Petitioner requested that the DHO review closed-circuit television ("CCTV"). (*Id.*). The DHO noted that the only camera view was of Petitioner entering the R&D area, and that there are no CCTVs located in R&D. (*Id.* at pp. 14-15).

The DHO found sufficient evidence that Petitioner committed the Code 203 violation, after considering and relying upon the incident report, staff memoranda corroborating the evidence in the report, the Duties of Staff Representative form, the Inmate Rights at Discipline Hearing form, and the Notice of Discipline Hearing before the DHO form. (*Id.* at p. 15). The finding of guilt for the Code 203 violation resulted in disallowance of 27 days of good conduct time, loss of phone privileges for 6 months, and disciplinary segregation for 30 days. (*Id.* at p. 16). The DHO cited the following reasons for imposition of the sanctions:

> Folk's threatening statement directed at staff shows a great deal of disrespect for authority. His behavior hampered the ability of the recipient of the threat to perform their duties in an appropriate manner. Further, to verbally threaten another possibly indicates a propensity for violent acts. The DHO finds the charge for code 203 to warrant the Disallowance of Good Conduct Time based on the offense being of a highly aggravated offense which greatly jeopardizes the safety of staff and inmates.

(*Id.*).

5

At the conclusion of the hearing, the DHO provided a copy of the report to Petitioner and advised him of his appeal rights. (*Id.* at p. 17). Thereafter, the DHO report was delivered to Petitioner. (*Id.*).

## II. **Discussion**

Petitioner claims that his due process rights were violated in the context of the disciplinary hearing process because the DHO failed to review video footage and the incident report was written in retaliation for filing lawsuits. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; (3) assistance in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564. Here, it is clear that Petitioner was afforded all of the required procedural rights set forth in

6

*Wolff*. He received the incident report on June 9, 2020. He appeared before the UDC. He was properly informed of his rights before the DHO hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. At the conclusion of the hearing, Petitioner received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Petitioner was also notified of his right to appeal.

Since Petitioner was afforded all of his procedural rights, the only remaining issue is whether there was "some evidence" to support the decision by the DHO. In accordance with *Hill*, there need only be "some evidence" to support the disciplinary decision. *Hill*, 472 U.S. at 455-56; *see also Denny v. Schultz*, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the Court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455. The record clearly reveals the existence of some evidence to allow the DHO to conclude that Petitioner was guilty of the charge. In concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the incident report, staff memoranda, the Duties of Staff

7

Representative form, the Inmate Rights at Discipline Hearing form, and the Notice of Discipline Hearing before the DHO form. (Doc. 21-1, p. 15). The DHO also advised Petitioner that there are no CCTVs in R&D. (*Id.* at pp. 14-15). The DHO's reliance on this documentary evidence supports a conclusion that the decision has some basis in fact and is supported by some evidence.

Petitioner also claims that prison officials issued the incident report for retaliatory reasons. Because this claim, as it relates to the loss of his good time credits, affects the duration of Petitioner's sentence, it is properly raised in his habeas petition. *See Queen v. Miner*, 530 F.3d 253, 255 n.2 (3d Cir. 2008). However, the Court's determination that there is some evidence to support the DHO's decision negates the claim. *See McGee v. Scism*, 463 F. App'x 61, 64 (3d Cir. 2012) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994) (holding that if a prison disciplinary committee's finding of a violation of prison rules is based on some evidence, that "finding essentially checkmates [a] retaliation claim")); *see also Lasko v. Holt*, 334 F. App'x 474, 477 (3d Cir. 2009) (holding because sufficient evidence supported the DHO's disciplinary determination, the retaliation claim must fail) (citing *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002)).

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Petitioner was found guilty of a 200-level, high severity

prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level prohibited acts:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1 Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- B.2 Forfeit up to 27 days of earned FSA Time Credits for each prohibited act committed.
- C. Disciplinary segregation (up to 6 months).
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job.
- J. Impound inmate's personal property.
- K. Confiscate contraband.
- L. Restrict to quarters.
- M. Extra duty.

28 C.F.R. § 541.3 (Table 1).

The sanctions imposed by the DHO were consistent with the severity level of the prohibited acts and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." *Levi v. Holt*, 192 F. App'x 158, 162 (3d Cir. 2006) (citing *Rummel v. Estelle*, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions

9

that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. *Moles v. Holt*, 221 F. App'x 92, 95 (3d Cir. 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The penalties imposed here, loss of good conduct time, disciplinary segregation, and loss of privileges do not work an "atypical and significant hardship" on Petitioner and do not serve to extend his confinement beyond the expected parameters of his sentence.[1] *Sandin*, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

### III.   Conclusion

Based on the foregoing, the Court will deny the petition for writ of habeas corpus. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: October 25, 2022

---

[1] As stated, Petitioner's projected release date is May 11, 2031, via good conduct time. (Doc. 21-1, pp. 3-7).